IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

SHAYNA PALMER,

    Plaintiff,

v.                            Civil Action No. 3:14CV276

BIG LOTS STORES, INC.,

    Defendant.

## MEMORANUDM IN SUPPORT OF DEFENDANT BIG LOTS STORES, INC.'S MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER WITH RESPECT TO RULE 30(b)(6) DEPOSITION

Defendant Big Lots Stores, Inc. ("Big Lots"), pursuant to Rule 26(c)(1) of the Federal Rules of Civil Procedure, hereby moves this Court to quash the plaintiff's Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) Of Defendant Big Lots Stores, Inc. By Its Representative, and for entry of a protective order regarding the same, for the following reasons:

### I.    FACTS

This is a premises liability case arising out of an alleged injury to Plaintiff Shayna Palmer ("Palmer") that occurred when she visited the Big Lots Store located at 2000 Plank Road, Fredericksburg, Virginia, on December 8, 2012. *See* Pl.'s Amended Compl. (ECF No. 23). Palmer filed her original action in the Circuit Court of the City of Richmond on or about December 18, 2013. Big Lots removed that action to this Court on April 21, 2014. Def.'s Notice of Removal (ECF No. 1).

On June 6, 2014, pursuant to Rule 30(b)(6), Palmer noticed Big Lots' corporate deposition for July 24, 2014, and designated **sixty (60)** separate topics on which to depose Big Lots. *See* Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) of Defendant Big Lots Stores, Inc. by its Representative [hereinafter "Notice of 30(b)(6) Deposition"] (Ex. A). Big Lots objects to many of

these topics on the grounds that they are overly broad, unduly burdensome, not narrowly tailored, and/or seek irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. *See* Def.'s Objections to Plaintiff's Notice of 30(b)(6) Deposition (Ex. B). Of the 60 designated topics, Big Lots objected to only 41 topics (numbered 1, 2, 4, 5, 6, 7, 8, 13, 15, 16, 17, 18, 19, 20, 21, 23, 24, 25, 32, 33, 34, 35, 36, 37, 38, 39, 41, 42, 43, 44, 45, 46, 47, 50, 51, 53, 54, 55, 56, 58, and 59), but raised no objection to the remaining 19 topics (numbered 3, 9, 10, 11, 12, 14, 22, 26, 27, 28, 29, 30, 31, 40, 48, 49, 52, or 57). *Id.* Where the topics are reasonable under the Federal Rules, Big Lots raises no objection and consents to providing 30(b)(6) corporate designee testimony on such subject matters.

Many of the topics designated are not narrowly tailored, and, as demonstrated below, have no relevance to the allegations in the Amended Complaint or the defenses in the Answer. Certain topics seek information pertaining to all of Big Lots' over 1,400 stores. More troubling, certain topics seek information pertaining to *any* retail store in the country. Additional topics seek information not limited in time and regarding mechanisms of injury dissimilar to that alleged in this case. For example, several topics address "merchandise" falling from shelves, which would necessarily include all items stocked by Big Lots at all times without regard to weight or shape, including items vastly different from the product alleged to have fallen and caused Palmer's injuries in this case. Finally, many of the topics deal with proprietary procedures or documents and, to date, no protective order has been entered with respect to such information.

Pursuant to Local Civil Rule 37(E), Big Lots issued individual written objections to Palmer's Notice of 30(b)(6) Deposition, and the parties thereafter conferred "by telephone to explore . . . the possibility of resolving the discovery matters in controversy." Local Civil R.

37(E); *see* (Ex. B). Upon conclusion of the Local Rule 37(E) conference, and in effort to further encourage resolution of the issues related to Palmer's Notice of 30(b)(6) Deposition, counsel for Big Lots sent counsel for Palmer a courtesy copy of Big Lots' "draft Motion for Protective Order regarding the plaintiff's Rule 30(b)(6) Corporate Deposition Notice." Letter from J. Matthew Haynes Jr., counsel for Defendant, to Kevin W. Mottley, counsel for Plaintiff (July 2, 2014) (Ex. C). In response, counsel for Palmer replied only that "Plaintiff and Defendant clearly have a difference of opinion when it comes to the appropriate use of a 30(b)(6) deposition and . . . the Plaintiff and Defendant will not be able to resolve most of the issues raised in your clients' objections." E-mail from Kevin Mottley, counsel for Plaintiff, to J. Matthew Haynes, Jr., counsel for Defendant (July 3, 2014) (Ex. D). Thus, despite Big Lots' "good faith effort . . . to resolve the discovery matters at issue," such efforts were unsuccessful. Local Civil R. 37(E).

Accordingly, this Court should quash Palmer's Notice of 30(b)(6) Deposition and enter a protective order forbidding inquiry into the certain topics and matters that are overly broad, unduly burdensome, and irrelevant.

## II.    **ARGUMENT**

Although the scope of discovery is broad, it is not unlimited.[1] The Fourth Circuit has explained that "upon motion of a party and 'for good cause shown,' the court [in which the action is pending or, on matters relating to a deposition,] in the district in which the deposition is to be taken may 'make any order which justice requires to protect a party from annoyance, embarrassment, oppression, or undue burden or expense,' including an order that the discovery not be had." *Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004) (quoting Fed. R. Civ. P.

---

[1] "It is no longer sufficient, as a precondition for conducting discovery, to show that the information sought 'appears reasonably calculated to lead to the discovery of admissible evidence.'" *In re Convergent Techs., Sec. Ltd.*, 106 F.R.D. 328, 331 (N.D. Cal. 1985). Instead, the Federal Rules expressly direct the Court to consider factors such as cost, inconvenience, and burden. *See* Fed. R. Civ. P. 26(b)(2)(C). This allowance for "manageable limits" on discovery permits the courts to weigh the need for information against the burden imposed on the opposing party. *English v. Cowell*, 117 F.R.D. 132, 143035 (C.D. Ill. 1986).

26(c)(1)). Specifically, a court may "forbid[] the disclosure or discovery," Fed. R. Civ. P. 26(c)(1)(A), "specify[] the terms . . . for the disclosure or discovery," Fed. R. Civ. P. 26(c)(1)(B), or "forbid[] inquiry into certain matters, or limit[] the scope of the disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(D). Even as to requests within the scope of discovery, the Federal Rules statutorily mandate courts to limit discovery when:

(i) The discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) The party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) The burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C). Here, Palmer's requests are both beyond the scope of discovery and in violation of Rules 26(c)(1) and 26(b)(2)(C).

Big Lots cannot reasonably be expected to provide a corporate designee, or multiple designees, with knowledge of the extraordinarily broad range of topics in Palmer's Notice of 30(b)(6) Deposition. Palmer's notice requires Big Lots' designee(s) to prepare on 60 broad topics covering information from all of Big Lot's over 1,400 retail stores. Complying with this Notice of 30(b)(6) Deposition would be unduly burdensome, expensive, and would not otherwise lead to the discovery of admissible evidence. For many of the topics Palmer designates, it would simply be impossible for Big Lots' designee(s) to gain the knowledge sufficient to testify on the topics.

Accordingly, good cause exists for this Court to protect Big Lots from "annoyance, embarrassment, oppression, or undue burden or expense" by quashing these portion of Palmer's Notice of 30(b)(6) Deposition and forbidding inquiry during the 30(b)(6) deposition of a Big Lots representative into the matters objected to by Big Lots.

**A.** **Palmer's Designated Topics for Big Lots' Rule 30(b)(6) Corporate Deposition Amount to a Fishing Expedition, Which is Prohibited under Federal Discovery Rules.**

Palmer's Notice of 30(b)(6) Deposition is contrary to the letter and spirit of the Court's discovery rules and amounts to nothing more than a fishing expedition. "Negligence cannot be presumed from the mere occurrence of damage," and Palmer's open-ended Notice of 30(b)(6) Deposition illustrates Palmer's efforts to fish for a factual theory of liability. *West Point v. Evans*, 224 Va. 625, 627–28 (1983). Big Lots seeks relief under Rule 26(c) from Palmer's overly broad Notice of 30(b)(6) Deposition because it imposes an unreasonable burden on Big Lots, seeks a tremendous volume of information which has no relevance to the claims at issue in this case, and otherwise fails to provide the particularity required by the Rules and that Big Lots needs to prepare for its 30(b)(6) deposition.

Palmer's Notice of 30(b)(6) Deposition is governed by Rule 30(b)(6) of Federal Rules of Civil Procedure, which provides, "[i]n its notice or subpoena, a party may name as the deponent a public or private corporation, . . . and must describe with *reasonable particularity* the matters for examination." Fed. R. Civ. P. 30(b)(6) (emphasis added). Thus, in order for Rule 30(b)(6) to "function effectively . . . the requesting party must take care to designate with *painstaking specificity*, the particular subject areas that are intended to be questioned, and that are *relevant to the issues in dispute.*" *Lipari v. U.S. Bancorp, N.A.*, No.: 07-2146-CM-DJW, 2008 U.S. Dist. LEXIS 82594, at *15 (D. Kan. Oct. 15, 2008) (emphasis added); *accord Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 638 (D. Minn. 2000) (emphasis added). Moreover, "[s]ince a responding party potentially faces sanctions for failing to adequately prepare a corporate representative to testify on its behalf, it is essential that the requesting party identify with 'reasonable particularity' the information that it wants corporate testimony about." *Blue Cross & Blue Shield v. Jemsek Clinic, P.A.*, No. 06-31986, 2013 Bankr. LEXIS 3121, at *20 (Bankr.

W.D.N.C. Aug. 2, 2013).  Palmer has not set forth *how* or *why* the incident occurred, thereby rendering it impossible as a threshold to assess whether any of the general subjects inquired of are remotely relevant to this case.  Moreover, as Palmer has yet to raise basic factual allegations supporting her theory of liability against Big Lots, the Notice of 30(b)(6) Deposition necessarily falls short of meeting the "reasonably particularity," and "painstaking specificity" requirements of Rule 30(b)(6).

In response to a Rule 30(b)(6) notice, a corporation must designate those individuals who will testify on the corporation's behalf based on information "known or reasonably available to the organization."  Fed. R. Civ. P. 30(b)(6).  In addition to designating those who will testify, the corporation must prepare those designees "so that they may give complete, knowledgeable and *binding* answers on behalf of the Corporation."  *Marker v. Union Fid. Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C. 1986) (emphasis added).  However, "[e]ven under present-day liberal discovery rules, [a corporation] is not required to have counsel 'marshal all of its factual proof' and prepare a witness to be able to testify on a given defense or counterclaim."  *In re Indep. Serv. Org. Antitrust Litig.*, 168 F.R.D. 651, 654 (D. Kan. 1996).  Accordingly, the effectiveness of Rule 30(b)(6) depositions "bears heavily upon the parties' reciprocal obligations."  *Lee v. Nuco-Yamato Steel Co. LLP*, No. 3:07CV00098 BSM, 2008 U.S. Dist. LEXIS 67901, at *3 (E.D. Ark. Aug. 25, 2008).

Palmer ignores her obligations under Rule 30(b)(6) and fails to identify, with "painstaking specificity," subject areas for questioning which are "relevant to the issues in dispute."  Not only are the 60 designated topics largely redundant and cumulative of her previously issued Requests for Production of Documents, but they also improperly seek to create damaging and "binding" 30(b)(6) testimony from a Big Lots designee who lacks personal

knowledge, and could not reasonably acquire knowledge, of the many generally designated topics. *Compare* (Ex. A), *with* Pl.'s June 6, 2014 Req. for Produc. of Documents (Ex. E). Where a corporate designee testifies on topics of which he denies any personal knowledge, he is limited in his testimony to "what [is] memorialized in writing or communicated from another, knowledgeable person." *Coryn Group II, LLC v. O.C. Seacrets, Inc.*, 265 F.R.D. 235, 245 (D. Md. 2010). As such, Palmer's 60 designated topics subject even a suitably prepared designee to an impossible task and an unreasonable burden. *See Lipari*, 2008 U.S. Dist. LEXIS 82594, at *15 ("An overbroad Rule 30(b)(6) notice subjects the noticed party to an *impossible* task. When the notice is overbroad, the responding party is unable to identify the outer limits of the areas of inquiry noticed, and designating a representative in compliance with the deposition notice becomes *impossible*."). The plain purpose of this overbroad designation is to create an impossible burden and the witness and then misuse at trial Big Lots' corporate designee's "binding" testimony by holding the designee's lack of personal, or any, knowledge unfairly against Big Lots.

As reflected by the 41 designated topics to which Big Lots objected, Palmer's Notice of 30(b)(6) Deposition is so overbroad, vague, and unduly burdensome, that Big Lots would be forced to "guess what issues [Palmer] actually intend[s] to explore during the deposition." *Blue Cross & Blue* Shield, 2013 Bankr. LEXIS 3121, at *13. In fact, Palmer's designated topics are couched in such overbroad terms that the areas of potential inquiries cover and include information (1) protected by the attorney-client privilege, (2) irrelevant to the claims and defenses raised in this case, (3) relevant only in products-liability cases, and (4) unlimited in scope, time, or geography. Thus, Big Lots asks this Court to quash Palmer's Notice of 30(b)(6) Deposition and enter a protective order.

1. **Palmer's Notice of 30(b)(6) Deposition Is So Overbroad It Seeks Attorney-Client Privileged Information.**

"[T]he simple fact that requested information is discoverable under Rule 26(b) does not mean that discovery must be had." *Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004). Under the Federal Rules, a party may "obtain discovery regarding any *non-privileged* matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1) (emphasis added). Here, many of Palmer's designated topics for Big Lots' 30(b)(6) deposition, topics numbered 1, 4, 5, 6, 7, 13, 23, 50, 51, 56, 58, and 59, as written, would allow Palmer improper access to information protected by Big Lots' attorney-client privilege. *See* Def.'s Objections to Plaintiff's Notice of 30(b)(6) Deposition (Ex. B).

Some of these objectionable designated topics are obvious in their intrusion into protected and privileged areas. Topic 6, for example, identifies Big Lots' "[c]laims of privilege; [and] Defendant's Privilege Log" as potential "matters for examination." *Id.* Such questions ought only be directed to defense counsel as to any claims which Palmer takes issue. Should Palmer actually have the opportunity to ask the Big Lots' corporate designee any and all questions related to this topic, any "claim of privilege" Big Lots has would essentially be rendered moot. This Court should not permit Palmer to circumvent Big Lots' privileged material in this manner.

Additionally, other designated topics invade the attorney-client privilege by identifying topics that only Big Lots' counsel could reasonably answer. For instance, topic 4 proposes to inquire into "Defendant's assertions and defenses as stated in its Answer," topic 5 similarly identifies "[s]ubjects covered by Plaintiff's interrogatories, requests for production, and requests for admissions; Defendant's answers thereto." *Id.* While there are many Big Lots personnel that may be able, collectively, to answer some questions relating to these topics, Big Lots' counsel

8

assisted with the preparation of the identified pleadings and documents and is likely in the sole position to provide "complete, knowledgeable, and binding answers" on Big Lots' behalf. These designations are thus transparently calculated to penetrate counsel's thoughts, work product, and mental impressions. Again, such violations of Big Lots' attorney-client privilege should not be permitted.

Finally, topics 1, 7, 13, 23, 50, 51, 56, 58, and 59, are written in overbroad terms and without "reasonable particularity," in effect opening the door for Palmer to seek from Big Lots' corporate designee information protected by the attorney-client privilege. For instance, under topics 23 and 50, identifying "[t]he Incident, including how and why it happened; who and what caused the Box(es) to fall or to be in a position where it could fall or was likely to fall; who and what is directly or indirectly responsible for the Box(es) falling," and "Defendant's investigation of the Incident," respectively, Palmer would necessarily have access to materials and information prepared *only* in anticipation of litigation as to incident facts, and conclusions arising from those facts, and counsel's judgment on conclusions such as risk, causation, and liability.

Accordingly, Palmer's topics are written in such overly broad terms that compliance therewith would necessarily infringe upon Big Lots' asserted attorney-client privilege. This Court should forbid inquiry into these particular subjects, or, at least require further clarification and specificity so as to protect Big Lots' privileged information.

### 2. Palmer's Notice of 30(b)(6) Deposition Is So Overbroad It Seeks Information Irrelevant to the Asserted Claims and Defenses in This Case.

Topics noticed for the Rule 30(b)(6) deposition must be "sufficiently limited" and "tailored for relevance to the claims and defenses involved in this case." *Coryn*, 265 F.R.D. at 238 ("To the extent information sought in a Rule 30(b)(6) deposition is relevant *to the claims or defenses in the case* and is known or reasonably available to the corporation, [the corporation]

must provide a corporate designee or multiple designees prepared to provide that information."). Accordingly, the "Court must determine whether the deposition seeks information relevant to [a] defense or reasonably calculated to lead to the discovery of admissible evidence." *EEOC v. Freeman*, No.: RWT-09-2573, 2012 U.S. Dist. LEXIS 114408, at *6 (D. Md. Aug. 14, 2012).

Here, Palmer's Notice for 30(b)(6) Deposition seeks information irrelevant to the claims and defenses in this action. "A few of the proposed topics don't even limit the scope of inquiry to the persons or matters pertaining to this action. . . . As to these, apparently discovery of all of [Big Lot's] business affairs is sought. Such topics are overbroad and must be refined." *Blue Cross & Blue Shield*, 2013 Bankr. LEXIS 3121, at *20. As described in more detail below, Palmer's Notice of 30(b)(6) Deposition seeks testimony related to (1) ladders, (2) surveillance, (3) other stores and other incidents, (4) best practices, industry standards, training materials, and internal policies and procedures, (5) spoliation, and (6) subsequent remedial measures. None of these topics bear any relation to the underlying claims and defenses in the pending litigation. Accordingly, Big Lots requests that this Court forbid, or at least limit, Palmer from asking questions not reasonably calculated to lead to the discovery of admissible evidence.

    a.    **Ladders**

Many of Palmer's designated topics, topics numbered 17, 21, 24, 32, 33, and 45, relate to ladders within the Big Lots store or Big Lots' use of ladders. (Ex. B). For instance topic 21 reads, "Defendant's policies and procedures, and safety practices, relating to . . . (b) using *ladders* in retail stores to access merchandise when customers are in the Store," and topic 45 reads, "Reasons why Defendant allowed and allows unmonitored *ladders* to be placed in the store." *Id.* (emphasis added).

Palmer has made no mention of a ladder or ladders in her Amended Complaint or discovery responses. *See* Pl.'s Amended Compl. (ECF No. 23). Likewise, Big Lots has not mentioned a ladder or ladders in its Answer or discovery responses. *See* Def.'s Answer (ECF No. 25). Moreover, as alleged, this case arises out of injuries allegedly sustained by Palmer when a "heavy box . . . fell and struck Plaintiff." Pl.'s Amended Compl. ¶¶ 6, 13 (ECF No. 23). There is simply no relevant fact—alleged or otherwise—relating to ladders, and Palmer's repeated reference to ladders is a fishing expedition aimed at creating facts not in evidence. Whether Big Lots employs policies and procedures in any of its 1,400 retail stores regarding ladders, or "reasons why" Big Lots allowed "unmonitored ladders" in its store on some unknown occasion are completely and wholly irrelevant to the asserted claims and defenses in this action, and such inquiries are not reasonably calculated to lead to the admissible evidence. As such, this Court should forbid Palmer from seeking information during the 30(b)(6) deposition related to a ladder or ladders.

### b. Surveillance

Palmer's Notice of 30(b)(6) Deposition includes four designated topics relating to surveillance of the Big Lots store. (Ex. B) (topics numbered 35, 36, 37, and 38). Three of the four, 35, 36, and 37, seek information related to "[s]urveillance cameras in the store" where Palmer's incident occurred, and one of the four, 38, seeks general information regarding "[p]olicies and procedures relating to use of surveillance cameras, decoy cameras, and signs warning the public of cameras." *Id.*

Big Lots informed Palmer's counsel during the June 5, 2014 Meet and Confer on discovery responses that no video surveillance of the area of the store where the incident occurred—or of the incident itself—exists. Any surveillance of other areas of the store or from other times or dates, and other information regarding Big Lots' surveillance camera locations or policies and procedures, is

unrelated and irrelevant to this case. *See, e.g.*, *Stroupe v. Wal-Mart Stores E., LP*, No. 3:07CV267, 2007 U.S. Dist. LEXIS 79898, *2–3 (E.D. Va. Oct. 29, 2007) (agreeing with the defendant, Wal-Mart, that video surveillance which "merely recorded the cashiers working at their respective registers" was irrelevant to the pending litigation). Nevertheless, Palmer demands from Big Lot's corporate designee information related to Big Lots' surveillance generally, although such information is not reasonably calculated to lead to the admissible evidence nor relevant to the facts, claims, and defenses in this case. Palmer cannot ask Big Lot's corporate designee about "all of [Big Lots'] business affairs," and this Court should not permit such overbroad discovery, which transparently seeks to create as issue over surveillance policy.

     **c.**    **Other Stores and Other Incidents**

     Palmer's designated topics, numbered 15, 16, 34, 47, and 55, each propose to inquire into subjects related not to the 2000 Plank Road, Fredericksburg, Virginia, Big Lots store, or to the alleged December 8, 2012 incident, but to *other* stores and *other* incidents. Pl.'s Amended Compl. ¶ 2, 10 (ECF. No. 23); *see* (Ex. B) (topic 15: "Other incidents in Defendant's stores . . . "; topic 16: "Information known to Defendant regarding such incidents that have occurred in other retail stores"; topic 34: "Data and reports concerning the frequency of customers complying with or not complying with signs . . . "). This Court should prohibit such a broad, unfettered fishing expedition.

     Big Lots operates over 1,400 retail stores, making these unlimited requests for information related to other stores and other incidents overly broad and unduly burdensome. Even if Big Lots produced designees with the extensive and potentially voluminous information requested, the information would be irrelevant to this case. Given that this litigation involves a singular incident wherein a "heavy box" fell from its shelving at the Fredericksburg, Virginia

Big Lots location, information related to other incidents or other stores is wholly irrelevant, and this Court should forbid Palmer from making such inquiries.

In *Donovan v. Wal-Mart Stores, Inc.*, the court agreed with Wal-Mart's objection to the scope of the plaintiff's interrogatories seeking information related to other incidents and other stores. *Donovan v. Wal-Mart Stores, Inc.*, No. 4:11-cv-00885-JMC, 2012 U.S. Dist. LEXIS 102335, at *6 (D.C.S.C. July 24, 2012). Specifically, where the plaintiff sued for negligence and wrongful death resulting from an altercation with a shoplifter at Wal-Mart's store in North Myrtle Beach, South Carolina, the court forbid discovery inquires into other incidents at other stores and reasoned that such inquiries "may not involve incidents that are similar enough to the instant case to be admissible at trial." *Id.* at *4–5.

In Virginia, "[t]he burden is on the plaintiff to produce evidence of preponderating weight from which the trier of fact can find that the defendant was guilty of negligence which was a proximate cause of the event resulting in damage. . . A plaintiff must show why and how the incident happened." *West Point*, 224 Va. at 627–28. Using evidence from other stores and/or other incidents does nothing to help Palmer satisfy her burden of showing "why and how the incident happened." Lacking any factual evidence of how and why the incident occurred, here, such open ended discovery illustrates the extent to which Palmer is fishing for a factual theory of liability. This case is, generally, an injury in search of a liability yielding incident. Accordingly, this Court should prevent Palmer from asking questions of Big Lots' corporate designee related to other incidents or other stores because, without knowledge of the facts of this incident, such information cannot be sufficiently "similar enough to the instant case to be admissible at trial," and is therefore irrelevant in discovery.

### d. Best Practices, Industry Standards, Training Materials, and Internal Policies and Procedures

Two of the subjects upon which Palmer seeks Big Lot's testimony concern "best practices" and industry standards. *See* (Ex. B) (topic 8: "Publications, reports, and other documents in Defendant's possession relating to safety and best practices for storing merchandise in retail areas"; topic 18: "Information known to Defendant regarding Industry Safe Practices"). Similarly, four of the designated topics cover Big Lots' employee training materials, internal policies and procedures, and other proprietary business information. *Id.* (topic 21: "Defendants' policies and procedures, and safety practices . . .[;] reasons for such policies and procedures; whether or not such policies and procedures were complied with or were violated with respect to the Incident"; topic 38: "Policies and procedures relating to the use of surveillance cameras . . . "; topic 39: "What training was provided to employees who were responsible for storing merchandise on shelves . . . "; and topic 40: "What training was provided to employees who were responsible for ladders . . . ").

On their face, these requests are overbroad and unduly burdensome because they improperly seek proprietary, protected, confidential, and internal business information and documents. Under Federal Rule of Civil Procedure 26(c)(1)(G), a court may order that a trade secret or "other confidential research, development, or *commercial information* not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G) (emphasis added). Palmer's requests for commercial information, including Big Lots' internal publications, reports, policies and procedures, and training materials, improperly seek proprietary information protected by Rule 26(c)(1)(G).

However, outside of the documents implicated by these proposed 30(b)(6) deposition topics, the potential *testimony* regarding these topics and underlying documents is similarly improper. Palmer's request for Big Lots corporate designee testimony on "best practices" and industry standards is nothing more than a request for Big Lots to identify the industry standards or best

practices it *believes* apply to the current litigation. Such requests for Big Lots' speculation as to what Palmer's case theories are or should be improperly shift Palmer's burden of proving what purported industry standards apply, and whether any alleged breach of such purported standards proximately caused the alleged incident described in the Complaint. *See Myers v. Sutton*, 213 Va. 59 (1972) ("The burden of proof in a negligence case is always on the plaintiff and this burden never shifts.").

From a practical perspective, even if Big Lots agreed to provide testimony on these topics, it would be impossible for Big Lots to properly designate a corporate representative. For instance, Palmer's request for corporate designee testimony on Big Lots' "safety and best practices," and "Industry Safe Practices," from all stores and any time period unduly burdens Big Lots to find a designee who can testify to an unlimited universe of information.

Further, it is well settled that "[w]hether a given course of conduct is negligent, or the exercise of care reasonable, must be determined by the standard fixed by the law, without regard to any private rules of the company." *Virginia Ry. & Power Co. v. Godsey*, 117 Va. 167, 168 (1915). "[A] person cannot, by the adoption of private rules, fix the standard of his duty to others, that is fixed by law, either statutory or common." *Id.* The Virginia Supreme Court reaffirmed this rule in *Pullen v. Nickens*, 226 Va. 342 (1983), and the Fourth Circuit has held that this law is substantive and not procedural such that it applies with equal force in federal court. *See Hottle v. Beech Aircraft Corp.*, 47 F.3d 106 (4th Cir. 1995). Accordingly, Palmer's inquiry into Big Lots' policies and procedures is not reasonably calculated to lead to the discovery of admissible evidence.

To the extent testimony on these matters is relevant and reasonably calculated to lead to the discovery of admissible evidence, however, Big Lots insists on "entry of an appropriate

Protective Order." *See* (Ex. B). To date, no protective order has been entered with respect to such information, and Big Lots respectfully requests that in the event this Court enters a protective order, such protective order extend to and include Big Lots' 30(b)(6) deposition.

### e.    Spoliation

Topic 7 of Palmer's Notice of 30(b)(6) Deposition identifies the following potential areas of inquiry:

> Defendant's notice of the incident, of Plaintiff's injuries, of Plaintiff's claim of any spoliation letter from Plaintiff's counsel, and of potential litigation. The date, content and recipient(s) of any litigation hold letter, notice, or preservation letter issued by Defendant to any of its employees or agents relating to the Incident.

(Ex. B). Such inquiry is clearly aimed at setting up a potential spoliation motion, as the topics are centered around Big Lots' notice, litigation holds, and evidence preservation. However, "[v]arious courts have held that such non-merits-based discovery is improper when the requesting party has not made a threshold showing that the spoliation has actually occurred." *Blue Cross & Blue Shield*, 2013 Bankr. LEXIS 3121, at *22 (citing *Cunningham v. Std. Fire Ins. Co.*, No. 07-cv-02538-REB-KLM, 2008 U.S. Dist. LEXIS 117304, at *5 (D. Colo. Jul. 1, 2008); *Martin v. Allstate Ins. Co.*, 292 F.R.D. 361 (N.D. Tex. Apr. 4, 2013)). Here, Palmer has not made a threshold showing that any spoliation has occurred, nor has the issue been raised until now. As such, Palmer's suggested topic 7 is improper "non-merits-based discovery" and should be barred during Big Lots' corporate designee deposition.

### f.    Subsequent Remedial Measures

Palmer's Notice of 30(b)(6) Deposition includes various topics which relate to remedial measures taken by Big Lots after Palmer's alleged incident. Among others, topics 53, 54, and 55 ask about "[a]ctions taken by Defendant . . . as a result, in whole or in part, of the Incident," "[s]ubsequent remedial measures taken to prevent future incidents similar to the Incident," and

"[m]easures taken at any store to prevent incidents similar to the Incident," respectively. (Ex. B). Not only are these requests is overbroad in scope, without limitation, and lacking the "reasonable particularity" required by Rule 30(b)(6), but they also improperly seek to uncover irrelevant information related to Big Lots' subsequent remedial measures, if any.

Rule 407 of the Federal Rules of Evidence requires, "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove: negligence; culpable conduct; a defect in a product or its design; or a need for a warning or instruction." Fed. R. Evid. 407. Moreover, what actions Big Lots may have taken *after* the "heavy box" fell from its shelving in the Fredericksburg, Virginia store are irrelevant to the basic premise of Big Lots' potential liability—"why or how" the "heavy box . . . fell and struck Plaintiff." Pl.'s Amended Compl. ¶¶ 6, 13 (ECF No. 23). Here, Palmer should be prevented from asking questions categorized by topics 53, 54, and 55, or similar topics thereto, that seek information which is irrelevant to the claims and damages in the pending litigation, which would be barred from admission under Federal Rule of Evidence 407, and which is unlikely to lead to admissible evidence and "would only serve to harass or burden [Big Lots]." *Kakuke v. Progressive Cas. Ins. Co.*, No. 06-4995, 2008 U.S. Dist. LEXIS 35178, at *7–13 (E.D. Pa. Apr. 30, 2008) (finding good cause to preclude the party during a deposition from inquiring into subsequent remedial measures on the basis that such inquiries were harassing and burdensome); *see also Vardon Golf Co. v. BBMG Golf Ltd.*, 156 F.R.D. 641, 653 (N.D. Ill. 1994) (denying a motion to compel discovery of subsequent remedial measures because the "evidence sought is not reasonably calculated to lead to the discovery of any other evidence but that relating to . . . culpability.").

**3.** **Palmer's Notice of 30(b)(6) Deposition Is So Overbroad It Seeks Information Relevant Only in Products Liability Cases.**

In addition to seeking information irrelevant to the claims and defenses raised in the pending litigation, Palmer's Notice of 30(b)(6) Deposition also seeks information related to legal standards inapplicable in this case as pled. Palmer's Amended Complaint seeks compensatory damages from Big Lots on basic negligence and premises liability theories; that Palmer sustained injuries as a proximate result of Big Lots' breach of duty. *See* Pl.'s Amended Compl. (ECF. No. 23). Nevertheless, Palmer identifies potential 30(b)(6) deposition topics in her Notice of 30(b)(6) Deposition seeking information related to a products liability action.

For instance, topics 19, 20, 43, 44, 45, and 46 all relate to "[*f]easible options* for storing merchandise," "[*f]easible options* for safely storing ladders," "*alternatives* [the] Defendant ha[d] to storing or stacking the Box(es)," "*alternative* procedures that were available to [Defendants' employees]," and "*alternatives* [that] were available to Defendant and its employees that would have prevented plaintiff from being injured or exposed to potential injury," respectively. (Ex. B) (emphasis added). The information these inquiries would produce during a 30(b)(6) deposition would not be relevant to the claims and defenses in this case, or to Palmer's burden of proving "why and how" the "heavy box" fell, but would only be relevant in a products liability context. "[A] Plaintiff's ability to show a *feasible alternative design* is an indispensable factor when determining whether the product is unreasonably dangerous." *Labelle v. Phillip Morris Inc.*, 243 F. Supp. 2d 508, 517 (D.C.S.C. 2005) (emphasis added). Since this is a premises liability case, feasible storage, stacking, or ladder placement alternatives are irrelevant. Worse, "alternatives" which would have prevented Palmer from being injured or put at risk may only arise from rank speculation since Palmer has yet to identify why or how the box allegedly fell, an essential factual

predicate to identifying alternatives. Accordingly, this Court should forbid Palmer from asking topics that relate only to standards "indispensable" to products liability determinations.

4. **Many of the Subjects in Palmer's Notice of 30(b)(6) Deposition Are Overbroad and Unduly Burdensome Because they Lack Temporal Limitations.**

Many of Palmer's designated topics in her Notice of 30(b)(6) Deposition are so overbroad that they lack any limitation or scope whatsoever. Rather than limit the topic of inquiry to the particular time period during which the incident in the Amended Complaint allegedly occurred (December 8, 2012), Palmer's designated topics instead seek information from *any* time period. By example, topics 34, 41, 39, 42, 47, and 58 all lack any temporal limitation. Where Palmer seeks testimony regarding "[w]hat training was provided to employees," topic 39, and "[w]hen and by whom were inspections of the stored merchandise," topic 41, potentially any and all Big Lots training, and any and all "inspections" of "merchandise"—from any time period and from any store—would be subject to questioning.

"The subjects into which Plaintiff may inquire in the 30(b)(6) deposition must not be overbroad and must be limited to a relevant time period, geographic scope, and related to claims for which Plaintiff has [raised]." *Young v. UPS of Am., Inc.*, No. DKC-08-2586, 2010 U.S. Dist. LEXIS 30764, at *26, *35 (D. Md. Mar. 30, 2010) ("Plaintiff's 30(b)(6) deposition inquires must be limited to a reasonable time period."). In *Blue Cross & Blue Shield v. Jemsek Clinic, P.A.*, the court found that because most of the proposed 30(b)(6) topics "contain[ed] no definition whatsoever of the relevant points in time," the task of designating a representative would become "impossible." *Blue Cross & Blue Shield*, 2013 Bankr. LEXIS 3121, at *13. Here, Palmer's failure to include "temporal reference points" in many of the proposed 30(b)(6) topics "renders the . . . proposed topics overbroad." *Id.* at *12–13. As such, this Court should not force Big Lots

to complete the "impossible" task of designating a representative responsible for answering questions without any temporal scope or restriction.

### III.    <u>CONCLUSION</u>

Palmer's Notice of 30(b)(6) Deposition is nothing more than a thinly veiled attempt to circumvent this Court's discovery rules. The topics upon which Palmer intends to seek testimony from Big Lots are overly broad, unreasonably burdensome, irrelevant to the claims at issue in this case, and fail to provide the particularity required of Rule 30(b)(6) and necessary for Big Lots to reasonably designate a corporate representative.

WHEREFORE, Defendant Big Lots Stores, Inc., pursuant to Federal Rules of Civil Procedure 26(c)(1)(A), 26(c)(1)(B), and 26(c)(1)(D), moves the Court for a protective order quashing the deposition of its corporate designee or, in the alternative, an Order limiting the scope of the requested inquiries to conform to the well established limitation the Rules require.

BIG LOTS STORES, INC.

       /s/    (J Matthew Haynes, Jr., Esq)
J. Matthew Haynes, Jr., Esquire (VSB#51007)
Gail M. Deady, Esquire (VSB#82035)
Lindsey A. Strachan, Esquire (VSB#84506)
McCandlish Holton, P.C.
1111 East Main Street, Suite 1500
P.O. Box 796
Richmond, VA 23218
(804) 775-3100 Telephone
(804) 775-3800 Facsimile
mhaynes@lawmh.com
gdeady@lawmh.com
lstrachan@lawmh.com
*Counsel for Big Lots Stores, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of July, 2014, I will electronically file the foregoing with

the Clerk of Court using the CM/ECF system, which will then send a notification of such filing

(NEF) to the following:

Stephen C. Swain (VSB# 12924)
Shuttleworth, Rudolff, Swain,
Haddad & Morecock, P.C.
4525 South Boulevard, Suite 300
Virginia Beach, Virginia 23452
(757) 671-6000 Telephone
(757) 671-6004 Facsimile
scswain@srgslaw.com

David B. Holt (VSB# 65564)
Joseph Smith, Ltd.
2100 Kecoughtan Road
Hampton, Virginia 23661-0437
(757) 244-7000 Telephone
(757) 244-7046 Facsimile
dholt@attorneys4injured.com

Kevin W. Mottley (VSB# 40179)
The Mottley Law Firm PLC
1700 Bayberry Court, Suite 203
Richmond, Virginia 23226
(804) 930-1022 Telephone
(804) 767-2592 Facsimile
kevinmottley@mottleylawfirm.com

Edward E. Scher, Esquire (VSB# 23064)
Law Office of Edward Scher, PLC
6912 Three Chopt Road, Suite D
Richmond, Virginia 23226
(804) 421-6000 Telephone
(804) 421-6101 Facsimile
edscher@severeinjurylaw.com

_____/s/___(J Matthew Haynes, Jr., Esq)__
J. Matthew Haynes, Jr. (VSB#51007)
Gail M. Deady (VSB# 82035)
Lindsey A. Strachan (VSB# 84506)
McCandlish Holton, P.C.
1111 East Main Street, Suite 1500
P.O. Box 796
Richmond, Virginia 23218
(804) 775-3100 Telephone
(804) 775-3800 Facsimile
mhaynes@lawmh.com
gdeady@lawmh.com
lstrachan@lawmh.com
*Counsel for Big Lots Stores, Inc.*