UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION



SHAYNA PALMER,

                                  Plaintiff,

v.

BIG LOTS STORES, INC.,

                                  Defendant.

Civil Action No. 3:14–CV–276

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Big Lots Stores, Inc.'s ("Defendant's") Motion in Limine to Exclude Plaintiff's Expert, Michael A. Matthews ("Motion") (ECF No. 106). For the following reasons, the Court hereby GRANTS the Motion.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of an incident that occurred at the Big Lots store in Fredericksburg, Virginia, on December 8, 2012. Plaintiff Shayna Palmer ("Plaintiff") claims a boxed artificial Christmas tree was improperly stacked, fell from a shelf, and struck her in the head ("the Incident").

On December 18, 2013, Plaintiff filed suit against Defendant in the Circuit Court for the City of Richmond, Virginia. Plaintiff seeks 20$ million for injuries she relates to the Incident. *See* Amended Complaint at 3. On October 17, 2014, Defendant filed the instant Motion to Exclude Michael A. Matthews ("Matthews") pursuant to Federal Rules of Evidence 401, 702 and 703. On October 31, 2014, Plaintiff filed an Opposition. Defendant filed a Reply on November 4, 2014.

## II.   LEGAL STANDARD

### a. *Motion in Limine*

Although not explicitly authorized by the Federal Rules, a party may file a motion in limine seeking to exclude evidence prior to the commencement of trial. *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (district courts have inherent authority to issue such rulings). These motions allow a court to rule on evidentiary issues in advance of trial in order to avoid delay and ensure an expeditious process. *See United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999). The decision to grant or deny a motion in limine is within the district court's discretion. *United States v. Verges*, No. 1:13cr222, 2014 WL 559573, at *2 (E.D. Va. Feb. 12, 2014).

### b. *Admissibility of Expert Testimony*

Pursuant to Federal Rule of Evidence 702, a witness who is qualified as an expert may testify in the form of an opinion if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(a)–(d). In assessing expert testimony, the district court acts as a "'gate-keeper' whose prime task is to assess whether the proffered evidence is sufficiently reliable and relevant." *Bourne ex rel. Bourne v. E.I. DuPont de Numours & Co.*, 85 F. App'x 964, 967 (4th Cir. 2004). In making that determination, the court is permitted to consider whatever factors bearing on validity that the court finds to be useful. *Id.* In *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 593–94 (1993), however, the Supreme Court defined specific factors for the court to consider in assessing reliability, including: (1) whether the theory or technique in question can be and has been tested; (2) whether it has been subjected to peer review and publication; (3) its known or potential error rate; (4) the existence

and maintenance of standards controlling its operation; and (5) whether it has attracted widespread acceptance within a relevant scientific community.

III.   **DISCUSSION**

### i.   *Parties' Arguments*

Defendant seeks to exclude all testimony and evidence that it expects to be proffered by Plaintiff's expert, Matthews, pursuant to Federal Rules of Evidence 401, 702 and 703.  To support her claim that Defendant was negligent, Plaintiff will offer expert testimony from Matthews, who opines a box fell on Plaintiff because Defendant breached various shelf manufacturing requirements, construction codes, and other safety provisions. Defendant argues that Matthews' opinions are inadmissible for three reasons: (1) he is not qualified to give them; (2) they are factually unsupported and rely on speculation, improper assumptions, and admitted error; and (3) they are not based on any testing or other discernible methodology. Memorandum in Support of Motion to Exclude Plaintiff's Expert, Michael A. Matthews, P.E. ("Def.'s Mem.") at 1.

The manufacturer of Defendant's shelving system is called, "Lozier." Defendant objects to Matthews testifying that Defendant did not comply with Lozier's instructions relating to how the shelf system is supposed to be anchored.  Def.'s Mem. at 11.  In a brief response, Plaintiff states that she does not intend for "Matthews to testify to an opinion that Big Lots did not comply with Lozier's instructions in regard to anchoring."  Pl.'s Brief in Opposition to Defendant Big lots Stores, Inc.'s Motion to Exclude Plaintiff's Expert, Michael Matthews ("Pl.'s Resp.") (emphasis in original) at 4-5.  Instead, Plaintiff intends for Matthews to testify to his opinion that Big Lots did not comply with Lozier's instructions "requiring that no shelf on the shelf system exceed[ed] the depth of the bottom deck."  Pl.'s Resp. at 5 (citing Ex. 1) (emphasis in original).

As to the applicability of certain Virginia building code provisions and regulatory provisions, such as OSHA, and whether Defendant complied with them.  Defendant seeks to

3

preclude Matthews from opining about building code and OSHA provisions whatsoever. Def.'s Mem. at 12-17  Specifically, Defendant argues that Matthews misapplies certain building, construction, and maintenance code provisions to conclude that the Gondolas were structurally unsound. *Id.* In response, Plaintiff renders this issue moot, saying "Plaintiff Agrees That, Upon Objection, Experts Should Not Be Permitted To Testify To Matters Of Law, Such As Whether Certain Code Or Regulatory Provisions Apply Or Whether Big Lots Complied With Or Violated Them." Pl.'s Resp. at 6.

Next, Defendant seeks to preclude Matthews from testifying that Defendant was negligent for failing to comply with its own internal policies and procedures. Def.'s Mem. at 18 (citing Ex. A at 20).  Defendant argues that Matthews applies an impossible and legally unfounded standard to Defendant by indicating that Defendant must stack the boxes to prevent "that once-in-a-lifetime-chance of something falling" on a customer. *Id.* (quoting Ex. D "Matthews Dep." 240:17-24). In response, Plaintiff agrees that Matthews will not testify, on direct examination, that Defendant was negligent for failing to comply with its internal policies. Pl.'s Resp. at 7.

Defendant argues that Matthews fails to employ any discernible methodology to show the alleged dangerousness of the criticized conditions. Def.'s Mem. at 20. Defendant argues that, although Matthews states that the conditions of the shelves and boxes created a "forseeable, very dangerous condition," he provides no basis for that conclusory leap. *Id.* Defendant submits that the mere identification of allegedly potential dangerous conditions does not prove that the condition caused the box to fall. Defendant argues that Matthews did nothing to verify that the combination of conditions that he criticizes actually existed on December 8, 2012. In fact, according to Defendant, Matthews does not know whether the shelf conditions he criticizes a year and a half later even existed on December 8, 2012 nor does he know the precise location where the event occurred. *Id.* 21. Additionally, Defendant underscores that Matthews conducted no testing to quantify the characteristics of the shelves when loaded nor did he do any

testing to support his theory that the conditions he criticizes as negligent actually could cause a box to topple, much less that those conditions played any role in the Incident. *Id.* At the very least, Defendant argues that Matthews failed to quantify, generally, the forces necessary to make a box fall under the conditions he criticizes. *Id.* As for Matthews' criticism of how Defendant placed the boxes on the shelf, Defendant argues that Matthews: (1) does not know how many or in what configuration the boxes were stacked on the cap shelves on December 8, 2012; (2) does not know if the box that fell was lying flat on the top shelf, or was stacked on top of another box; (3) does not know if another customer accessed the box before Palmer's Incident; and (4) does not know if the box that hit Palmer touched someone on its path toward her or was dropped on her. *See id.* Likewise, Defendant argues that Matthews "has no basis to determine whether any 'minor contacts' or 'normal movements or vibrations' existing in the Store were sufficient to move a Q Box to any extent, in any configuration. Matthews also failed to define or measure the 'minor contacts' or 'normal movements or vibrations' contemplated in his report." *Id.* (citing Ex. D. "Matthews Dep." 233:6-234:10). As a consequence, Defendant argues that "without such testing or measurements, these 'minor contacts' or 'normal movements or vibrations' remain un-quantified. Without quantification, Matthews has no factual basis for his opinion that these forces could make a Q Box 'topple over' and fall off the Top Shelf under the conditions he criticizes, much less that they caused a Q Box to fall on December 8, 2012." *Id.* at 21. Likewise, Defendant argues that Matthews' opinion rests on many assumptions and that, because he cannot verify that any of the assumptions existed on December 8, 2012, his causation opinions have no factual basis. In sum, Defendant argues that Matthews must speculate to bridge gaps between the known facts at issue and those required by his causation opinions—which, Defendant argues, ignore alternative hypotheses. *Id.* at 25. Defendant argues that Matthews fails to employ any discernible methodology to also establish the alleged risk was forseeable to Defendant. Defendant argues that Matthews' force of impact calculations are based on a simple but rigid physics formula inapplicable to the instant matter. Defendant maintains that

5

Matthews even agrees that the absence of facts regarding the incident "limits the accuracy and usefulness of his calculations." *Id.* at 26 (citing Ex. D "Matthews Dep." 225:6-13). For example, Defendant reports that Matthews' force of impact calculations contemplate a falling box stacked three boxes high. *Id.* at 27 (citing Ex. A at 17). However, Defendant claims that "Matthews nevertheless admits there is no evidence that any Q boxes were ever stacked more than two boxes high." *Id.* at 27 (citing Ex. D "Matthews Dep." 187:17-23). Because Matthews does not know, among many unknowns, where the boxes' "center of gravity was when it contacted Palmer's head" or whether it "could have contacted someone or something else before it struck Palmer," his calculations are based on assumptions. Matthews admits,

> This is a very conservative impact study that takes it from force of zero to impact. No. There is no pushing force moving it. There is no velocity as it comes off the shelf added to this. This is straight from, if I take it from right here and sdrop. So, yes, it does not include the additional forces that would cause it to come off the shelf added to the impact.

*Id.* 217:1-8. Thus, Defendant disputes Matthews' force of impact formula and argues that it is inapplicable here "because the facts do not match the simple conditions it contemplates, i.e., a solid object falling straight down, uninterrupted, and coming to a complete stop." *Id.* 216:18-217:8, 222:6-19. In sum, Defendant argues that his report is unreliable because it speculates as to its variables and is based on assumptions. *Id.* at 29. In opposition, Plaintiff disagrees with Defendant's discussion regarding Matthews' "causation" opinion. Pl.'s Resp. at 8. Plaintiff confirms that Matthews will not give an opinion as to what precise mechanism caused the boxes to topple and fall nor will he rule out any possible explanation. *Id.* In fact, Plaintiff claims, the only "causation" theory to which Matthews will testify is designed to educate the jury about the types of mechanisms and forces that can cause heavy boxes to fall. *Id.*

### ii.    *Analysis*

As a preliminary matter, Plaintiff concedes multiple points raised by Defendant. For example, although Plaintiff disputes whether Matthews may testify to Defendants' noncompliance with the shelf manufacturer's instructions, Plaintiff concedes that that Matthews

6

will not testify as to matters of law or whether Defendant violated certain code, regulatory provisions, and internal policy. Regarding Matthews' force of impact calculations, Plaintiff also concedes this point and "does not intend to introduce those opinions into evidence." *Id.* Thus, a significant question emerges:  how will Matthews justify his opinions without being able to explain the foundation upon which he draws his conclusions?

As a threshold matter, Defendant contends that "Matthews is not a retail merchandising safety expert, and is not qualified to testify regarding whether Big Lots guidelines, much less [whether] their actual practices related to box storage, conform to applicable industry standards or practices." Def.'s Mem. (citing Ex. D. "Matthews Dep." 253:19-253:15).  In fact, Defendant argues, Matthews' report and testimony is rooted only in "guesswork."  This Court agrees. Additionally, the opinions and conclusions in Matthews' expert report are based on insufficient facts or data as required under Federal Rule of Evidence 702.  Matthews' reconstruction of the accident is premised on assumptions and speculation—not supported by the record.

Although discovery has concluded, scant evidence exists to explain many matters crucial to establishing a foundation:  (1) the identity of the box (or boxes) that fell are unknown; (2) whether a customer manipulated the box or the box fell on its own is unknown; (3) the presence of other boxes stacked on the shelves is unknown; and (4) whether the falling box (or boxes) were stacked or lying flat is unknown.  His report and "findings" are primarily based on his reconstruction of the scene using two exemplar Q boxes provided by Defendant's counsel. However, it is disputed whether a Q box was the type of box that even fell on Plaintiff.  As Defendant contends, Matthews' reconstruction is premised on assumptions and speculation. Thus, his reconstruction of the accident using only two of these so-called exemplar boxes is not reliable.  *See Smith v. Va. Commonwealth Univ.,* 84 F.3d 672, 687 n.7 (4th Cir. 1996) ("[A]n expert's opinion is inadmissible when it is based on assumptions that are speculative and are not supported by the record."); *Bryte ex rel. Bryte v. Am. Household, Inc.,* 429 F.3d 469, 477 (4th Cir. 2005) ("*Daubert* aims to prevent speculation").  Further, while the exemplar Q boxes may

provide an example of the kind of box that may have hit Plaintiff, it cannot provide an example of the condition of the actual box involved because, at this point, that is unknowable. In sum, Matthews' testimony must be excluded because it not sufficiently relevant or reliable to be admitted under Rule 702. Based on the aforementioned reasons, the Court finds that Matthews offers no more than a conclusory, speculative connection between Defendants' alleged negligence and the event— there is just too speculative a foundation for his reconstruction opinions to have any merit.

## IV.   CONCLUSION

For the foregoing reasons, the Motion in Limine to Exclude Plaintiff's Expert, Michael A. Matthews ("Motion") is GRANTED. ECF No. 106.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order shall issue.

_____/s/_____
James R. Spencer
Senior U. S. District Judge

ENTERED this  12th  day of January 2015.