UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

SHAYNA PALMER,

                                        Plaintiff,

v.                                                        Civil Action No. 3:14–CV–276

BIG LOTS STORES, INC.,

                                        Defendant.

## MEMORANDUM OPINION

THIS MATTER is before the Court on a Motion for Summary Judgment ("Motion") (ECF No. 107) filed by Defendant Big Lots Stores, Incorporated ("Big Lots"). Plaintiff Shayna Palmer ("Palmer") opposes. For the reasons stated below, the Court hereby GRANTS the Motion for Summary Judgment. ECF. 107.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### a. Procedural Background

This case arises out of an incident that occurred at the Big Lots store in Fredericksburg, Virginia, on December 8, 2012. Palmer claims a boxed[1] artificial Christmas tree was improperly stacked, fell from a shelf, and struck her in the head ("the Incident").

On December 18, 2013, Palmer filed suit against Big Lots in the Circuit Court for the City of Richmond, Virginia. Palmer seeks 20$ million for injuries she relates to the Incident. *See* Amended Complaint at 3. On April 17, 2014, Big Lots filed its Notice of Removal to this Court. On October 17, 2014, Big Lots filed a Motion for Summary Judgment. Palmer filed its response

---

[1] The evidence is in conflict as to whether one or two boxes fell. In a Facebook message, Palmer states that "2 xmas tree boxes fell . . . ." Defendant's Memorandum in Support of Big Lots' Motion for Summary Judgment ("Def.'s Mem.") Def.'s Mem. Ex. J. However, Palmer's Amended Complaint only refers to "a heavy box." Amended Complaint at ¶ 6 (stating that "a heavy box (hereinafter referred to as the 'Box') was placed in the Store on a high shelf"). Fred Hicks, the only identified witness, believes one box fell. Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment (Pl.'s Resp.) at 10 n.6. Big Lots' records, by contrast, indicate that more than one box fell. Pl.'s Resp. Ex. 16. Therefore, hereinafter any reference to one box implicitly refers to two boxes.

on October 21, 2014.  Big Lots filed a reply on October 27, 2014.  This matter is now ripe for review.

### b.  Factual Background

The record evidence, viewed in the light most favorable to Palmer, shows the following. On December 8, 2012, Palmer went with her son to the Fredricksburg Big Lots around 12:00pm to purchase "car snacks."  Defendant's Memorandum in Support of Big Lots' Motion for Summary Judgment ("Def.'s Mem.") Ex. G (Palmer Dep. 54:19-22; 56:13-57).  Upon arriving at the Seasonal Aisle ("aisle"), in which various holiday items were displayed for sale, she stopped to look at some chocolate ornaments somewhere near the middle of the aisle.  *Id.* 69:23-72; *see also* 69:3-13, 73:21-79:16 (indicating that she scanned her surroundings and found nothing amiss).  There were people in the aisle around the time the Incident occurred.  *Id.* 79:24-81:17. Shortly after arriving in the aisle, Palmer debated with her son about getting one or two bags of chocolate Christmas ornaments.  *Id.* 71:1-25, 72:1-5.  She was facing away from the shelf, "just standing there . . . [not] touching anything, [except for] just the two things [she] had in [her] hand right in front of her."  *Id.* 72:1-5.  Suddenly, "one or more 21.2 pound boxes fel"l from the upper shelf, and she suffered substantial injuries.  Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment (Pl.'s Resp.) at 10 ¶ 25.  After the box struck Palmer's head, she fell to the floor, with her legs splayed out in front of her.  *Id.* at 10 ¶ 26.  She held her hands to her head, crying, and exclaimed "[m]y head is hurting, my head is hurting."  *Id.*  A man, who was present that day as a customer and had never met Palmer before, Fred Hicks ("the witness"), helped her to a nearby ladder for her to sit and rest.  *Id.*  Palmer had not moved or touched the box.

Palmer sat in Big Lots' office "for a couple of hours waiting for her husband to come pick her up."  Def.'s Mem. Ex. M (Causey Dep. 41:2-4).   After arriving to the scene, Big Lots' store manager, Jerry Burnett, left the following voice mail message for Palmer's neighbor:

> Hello Sandy, this is Jerry Burnett with Big Lots. Your neighbor Shana [sic] is here, she, a box fell and hit her on the head, she's needing to get in touch with her husband. If you get the message in the next little bit, um, give us a call here at the store if you would please. Again, my name is Jerry Burnett, the phone number is 540-374-1639. Thanks.

Pl.'s Resp. Ex. 25. He also completed a form that specifically required him to check a box if the Incident was "[c]aused by other causing party." *Id*. Ex. 16. He left the box unchecked. *Id*.

The witness saw a single box fall and hit Palmer but he does not know how the box fell or what made it fall. Def.'s Mem. Ex. N (Hicks Dep. 20:7-9). Big Lots' employee, Darlene Causey ("Causey"), heard a noise, but did not see the box fall. Def.'s Mem. Ex. M (Causey Dep. 27:5-23). When Causey investigated the noise and approached Palmer, she spoke to another customer in the aisle who admitted he tried to remove a boxed tree from the upper shelf and caused it to fall. *Id*. at 27:5-23. Reportedly, the same customer had asked Causey about accessing a boxed tree from the upper shelf shortly before she heard the noise. *Id*. The customer's identity was never discovered.

Big Lots, generally, has employees "do figure-eight walks . . . to identify any issues that may be going on." Def.'s Mem. Ex. B (Corporate Dep. 158:17-20). Big Lots has a "safety video," which "warns employees of the danger of stacked merchandise." Pl.'s Resp. at 6 ¶ 15. According to Palmer, "[t]he problem of customers getting hit by falling merchandise is so prevalent in Big Lots' stores that Big Lots even has a name for it – 'struck-bys' – and acknowledges that it is one of the biggest causes of accidents in its stores." *Id*. Big Lots gave its employees safety instructions about dangerous conditions arising from stacked boxes. Pl.'s Resp. at 6 (citing Ex. 3 (Causey Dep. at 90, 105-12)). Big Lots had written safety training materials concerning securing general merchandise. *See* Pl.'s Resp. at 7-8. Big Lots' "risk management manual also contains safety practices and instructions to employees, including for the proper and safe methods for storing and stacking boxes and other merchandise . . . . The manual acknowledges that stacked boxes can collapse and fall." *Id*. at 8 ¶ 18. On the interior of "all of . . . Big Lots' stores" are shelves that are set in "all aisles." Pl.'s Resp. Ex. 18 (Corporate Dep. 101:20-24;

102:1-10).    Big Lots considers anything on those shelves as storage and therefore, "unshoppable." *Id.* at 102:11-17.  Big Lots had a "Christmas Tree Guide 2012" (the "Guide"), which "<u>gave specific instructions to employees as to how they were to display and store the Christmas tree boxes</u>." *Id.* at 18 ¶ 19 (emphasis in original) (citing Ex. 1 at 121-27)[2].  The Guide provided, "[Y]our store may receive more boxed tree inventory than your widespan [display] can hold. If this is true for your store, you will need to create an 'additional boxed stock destination' in your backroom."  Pl.'s Resp. Ex. 18.  The Guide also provides, "[k]eep this area easily accessible and organized to aid in widespan stock replenishment." *Id.*  Big Lots insists that the Christmas tree guide is merely a "reference tool." Def.'s Mem. Ex. B (Corporate Dep. 125:12-13, 23; 126:9-13; 128:12-17) (testifying that the Christmas Tree Guide is a "reference tool," utilized by stores and store managers, and that "[i]t should be used as just that.").  Big Lots "provides a Christmas Tree Guide for their associates and managers as a reference tool. [Big Lots] provide[s] [their] associates and managers with many reference tools." *Id.* 125: 18-20.  A Big Lots' regional vice president, Bill Gleussner, "gave specific directions to all district managers that they were to utilize the 25-inch cap shelves as storage area for their trees." Pl.'s Resp. Ex. 1 (Corporate Dep. 130:9-16).  Over 241 stores received directions from the regional vice president.  *See* Def.'s Mem. Ex. B (Corporate Dep. 128:9-23).  Big Lots' employees followed the regional vice president's directions "exactly." Pl.'s Resp. at 9 ¶ 21.

## II.    LEGAL STANDARD

### a.  Summary Judgment

A motion for summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also id.* at 322-24 (noting that once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings,

---

[2] Palmer underlines this language but no such underlining is included in the language of the Guide.

but must instead set forth specific facts illustrating genuine issues for trial). If there is no genuine dispute as to any material fact, it is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted). However, if the court finds that there *is* a genuine issue of material fact, the motion must be denied. A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2720 (3d ed. 2011).

A court must look to the specific facts pled to determine whether a triable issue exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1996). The moving party bears the burden of establishing the nonexistence of a triable issue of fact by "showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325 (internal quotations omitted). Hence, "[w]hen the nonmoving party fails to make a sufficient showing establishing an essential element of [her] case and [she] bears the burden of proof on that issue, there is no genuine issue of material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Cole v. Food Lion, L.L.C.* 370 F. Supp. 2d 434, 438 (E.D. Va. 2005) (quoting *Celotex*, 477 U.S. at 322) (internal quotations omitted). "The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict." *Anderson*, 477 U.S. at 252. All "factual disputes and any competing, rational inferences [are resolved] in the light most favorable to the party opposing that motion." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citations omitted). Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248. "Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates the other party should win as a matter of law." *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299,

308 (4th Cir. 2006). Thus, if the nonmoving party's evidence is only colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 at 249–50.

### III. PARTIES' ARGUMENTS

#### a. Whether Another Customer, Not Big Lots, Caused the Incident

Big Lots argues that Palmer fails to provide any evidence demonstrating that Big Lots' negligence cause her injuries. In fact, Big Lots argues that Palmer even admits that another customer, not Big Lots, caused the Incident. As such, Big Lots argues that Palmer cannot show Big Lots affirmatively created any dangerous condition that purportedly caused her injuries since she blames a third party and also contends that Big Lots is not responsible for the negligence of third parties as it is not an insurer of Palmer's safety. *See* Def.'s Mem. at 10 (citing *Murphy v. J.L. Saunders, Inc.*, 202 Va. 913, 917 (1961). Big Lots argues that Palmer has not satisfied her burden to establish a *prima facie* case of negligence primarily because she has not "single[d] out . . . the cause of the accident [from] a host of other plausible explanations," has not established "that [her] proposed explanations are any more reasonable than the others," and thereby fails to "create a jury issue regarding the accident's cause." *Id.* at 10 (quoting *Farren v. Gilbert*, 224 Va. 407, 411 (1982). Big Lots explains that in March, April, and May of 2013, Palmer admitted to three different people on three separate occasions that an unknown third party—not Big Lots—caused the box to fall and hit her. *See* Def.'s Mem. Exs. J, K, L. Therefore, Big Lots argues that, by her own admission, Palmer concedes that any injury she suffered was the result of the conduct of a third party. Big Lots reports that in March of 2013, Palmer wrote her sister that "2 xmas tree boxes fell from the top shelf and hit [her] on the head . . . I think someone knocked them down and I just happened to be in the way." *Id.* Ex. J. Likewise, less than two weeks later, Big Lots discloses that Palmer told an acquaintance that "the [Big Lots'] aisle [was] crowded. Someone was moving stuff on the top shelf and 42 pounds of boxes fell on my head." *Id.* Ex. K. Similarly, Big Lots argues that Palmer reiterated her account that an unknown third party caused the box to fall in a May 2013 Facebook communication with

6

another acquaintance, informing him that the boxes "fell from the top shelf right on to [her] head. [S]omeone was messing with items on the top shelf as I was walking by." *Id.* Ex. L.

In opposition, Palmer argues that Big Lots has no evidence of an intervening negligent act by another customer that would relieve Big Lots of liability for permitting a dangerous condition to exist. Pl.'s Resp. at 27-28. Palmer argues that this Court should reject Big Lots' argument because there is no evidence that "this mysterious, unknown, and invisible 'someone' was a customer." *Id.* at 27. Palmer then argues that if such a person exists, he or she was most likely a Big Lots employee. *Id.* In sum, Palmer argues that, beyond the fact that Big Lots has no evidence that a third party was negligent and whose negligence constituted a superseding cause to relieve Big Lots of liability, Big Lots stacked the boxes in a manner it knew was dangerous. Pl.'s Resp. at 29.

### b. *Why* and *How* the Box(es) Fell

Big Lots asserts that even if the Court disregards Palmer's written admissions indicating that another customer caused the Incident, Palmer has no evidence beyond mere speculation and conjecture as to why and how the box(es) fell. According to Big Lots,

> Negligence cannot be presumed from the mere happening of an accident. . . . The burden is on the plaintiff to produce evidence of preponderating weight from which the trier of fact can find that the defendant was guilty of negligence which was a proximate cause of the accident. The evidence must prove more than a probability of negligence. The plaintiff must show why and how the accident happened. And if the cause of the accident is left to conjecture, guess or random judgment, the plaintiff cannot recover.

Def.' Mem. at 11 (quoting *Sneed v. Sneed*, 219 Va. 15, 17 (1978)). Big Lots argues that Palmer cannot meet her burden of proof because: (1) she did not see "the specific" box before it hit her; (2) she testified that "gravity" caused the box to hit her; (3) she does not know where the box was located before it hit her; and (4) she does not know whether the box that fell on her was, in fact, stacked and not lying directly on the shelf. Def.'s Mem. 12. Big Lots looks to *Cole v. Food Lion*, 270 F. Supp. 434 (E.D. Va. 2005) to support its argument. Def.'s Mem. at 13. In *Cole*, the court found no hazard even where shopping carts were rolling haphazardly around a parking lot.

7

*Cole*, 370 F. Supp. 2d at 43.  To reach its holding, the Court in *Cole* reasoned that because the plaintiff did not see the cart before it hit her and did not know what caused the cart to move—other than the wind—she presented mere conclusory inferences to establish Food Lion's negligence. *Id.* at 439. Big Lots argues that the facts of the instant case are akin to those in *Cole* for the following reasons. First, Palmer claims she did not see the box before it hit her; just as the plaintiff in *Cole* speculated that a natural cause—wind—caused the allegedly dangers condition, Palmer speculates gravity caused the box to hit her.  *Id.*  Second, Big Lots argues that just as the witness in *Cole* did not know what set the cart in motion, the only known witness to Palmer's Incident does not know what set the box in motion.  *Id.*  Therefore, Big Lots argues that these factors along with testimony that the boxes do not fall off Big Lots' shelves "under normal conditions" demonstrate that Palmer's claims are even weaker than those the plaintiff presented in *Cole*. *Id.* (citing Ex. B).

Palmer energetically disagrees and argues that Virginia law does not require that Palmer prove the precise mechanism that caused the Incident.  Instead, Palmer asserts that she must establish that the unsafe condition existed and how that condition caused injury.  Pl.'s Resp. at 18. Palmer underscores that the Fourth Circuit, following the holdings of the Supreme Court of Virginia, has expressly rejected Big Lots' argument and, instead, has held that a plaintiff who has shown the existence of an unsafe condition and how it caused her injury is not precluded from reaching a jury on the issue of negligence. *Id.* (citing *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 452 (4th Cir. 2004).

### c.  Whether Big Lots Had Actual or Constructive Notice

Without any evidence that Big Lots' affirmative conduct created a dangerous condition, Big Lots argues that Palmer must rely on the traditional notice standards required by Virginia law.  *Id.* at 21. Big Lots argues that even if Palmer had some evidence of a dangerous condition and that "a combination of factors actually caused" the Incident, Palmer nevertheless cannot show Big Lots had actual or constructive notice of the condition.  *Id.* at 17.  In sum, Big Lots

8

concludes that because there is no evidence of actual or constructive notice of an alleged dangerous condition, Palmer cannot make a *prima facie* case of negligence against Big Lots, and, as such, the Court should grant summary judgment. Concerning actual knowledge, Big Lots simply states that "Palmer has no evidence that Big Lots actually knew of the factors she alleges created the dangerous condition, much less that those conditions could, or likely would, cause" a box to topple off of the shelf. *Id.* Therefore, Big Lots argues that Palmer must provide evidence that Big Lots had constructive notice to meet her burden of proof. *Id.* at 17-18. As the court said in *Grim v. Rahe, Inc.*, 246 Va. 239, "[c]onstructive knowledge or notice of a defective condition of a premise or a fixture may be shown by evidence that the defect was noticeable and had existed for a sufficient length of time to charge its possessor with notice of its defective condition." *Id.* at 242; *see also id.* at 242 ("[I]f the evidence fails to show when a defect occurred on the premises, the plaintiff has not made out a prima facie case [of negligence]." Accordingly, Big Lots argues that because Palmer cannot provide any evidence as to when a defect occurred on the premises, Palmer cannot establish a *prima facie* case of negligence. *Id.* at 18. condition arose under any analysis. Def.'s Mem. at 19.

Palmer argues that the principles *Hodge* articulated are contrary to Big Lots' suggestions because that case demonstrates that Palmer need not explain what caused the box to fall. Pl.'s Resp. at 19. Palmer argues *Hodge* sets forth governing law for this case, but the result in *Hodge* is based on facts that are easily distinguishable from those of the instant case. *Id.* at 27. Palmer also argues that *Holcomb v. NationsBanc Financial Servs. Corp.*, 248 Va. 445 (1994) demonstrates that the absence of evidence as to what caused the box to fall would not preclude the jury from finding that Palmer's injury resulted from Big Lots' negligence. *Id.* at 20. Similarly, Palmer argues that *O'Brien v. Everfast, Inc.*, 254 Va. 326 (1997) supports her argument that the evidence presented here would allow a reasonable jury to conclude that Big Lots had actual or constructive notice of the unsafe condition that caused her injury—*i.e.*, that the condition posed a foreseeable risk of danger to invitees and Big Lots had actual or imputable

knowledge of the condition and its danger—and the jury could conclude that Big Lots was negligent in addressing the unsafe condition. *Id.* (citing *O'Brien v. Everfast, Inc.*, 254 Va. 326, (1997)). Here, Palmer argues that the evidence against Big Lots strong because (1) "there is no question Big Lots stacked the boxes"; (2) "Big Lots had a multitude of express safety rules warning against the very actions Big lots took and identifying the exact hazard and injury that actually occurred"; (3) "Palmer did nothing to cause the box(es) to fall"; (4) "there is evidence that the boxes were stacked on an uneven, unstable surface not suitable for stacking and that the boxes themselves were not suitable for stacking" and (5) most importantly, "Big Lots allowed the dangerous condition to exist for as much as two months until the time when the box or boxes fell and injured Palmer." *Id.* at 23-24.

## IV.    ANALYSIS

This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C § 1332. A court exercising diversity jurisdiction applies the substantive law of the forum state. *Erie R.R. v. Tompkins,* 304 U.S. 64, 78–79 (1938). Therefore, Virginia law governs this diversity case. *Id.*

Under Virginia law, a store owner has the duty to exercise ordinary care in providing a reasonably safe premises for its invitees. *Winn-Dixie Stores, Inc. v. Parker,* 396 S.E.2d 649, 650-51 (Va. 1990). To establish negligence, a plaintiff must show "the existence of a legal duty, a breach of the duty, and proximate causation resulting in damage." *Atrium Unit Owners Ass'n v. King,* 266 Va. 288, 293 (2003). Jurisprudence related to negligence in Virginia is centered more on duty to invitees and awareness of danger. *See, e.g., Holcombe,* 450 S.E.2d at 160. When there is no evidence that the store owner actually created a dangerous condition on its premises, the plaintiff may instead prove breach of the duty by showing that the defendant had actual or constructive notice of the hazard that allegedly resulted in the plaintiff's injury. *See Memco,* 348 S.E.2d at 231. Failure to establish that the condition actually created a danger is fatal to the claim, given that proof of a hazardous condition is the initial element of a negligence

10

claim. Cole, 370 F. Supp. 2d at 439 (citing *Kendrick v. Vaz, Inc.*, 244 Va. 380 (1992)); *Parker v. CBOCS East, Inc.*, Civil Action No. 6:09-cv-00032, 2010 WL 316986 (W.D. Va. January 25, 2010). "If an ordinarily prudent person, given the facts and circumstances [the store] knew or should have known, could have foreseen the risk of danger resulting from such circumstances, [the store] had a duty to exercise reasonable care to avoid the genesis of the danger." *Memco*, 348 S.E.2d at 231. On this issue of foreseeability, the Supreme Court of Virginia has also noted, "'[i]f an occurrence is one that could not reasonably have been expected the defendant is not liable. Foreseeableness or reasonable anticipation of the consequences of an act is determinative of defendant's negligence.'" *Holcombe*, 450 S.E.2d at 160 (quoting *Montgomery Ward & Co. v. Young*, 79 S.E.2d 858, 860 (Va. 1954)). In sum, the jury determines the issue of foreseeability. *See Yates v. Lowe's Home Centers, Inc.*, No. 2:01CV00022, 2001 WL 1231515, at *4 (W.D. Va. Oct. 15, 2001).

### a. *Prima Facie* Case

The law surrounding premises liability is complex. To establish a *prima facie* case of premises liability, the plaintiff must show an unsafe condition, and must prove "'*why* and *how* the incident happened'; 'if the cause of the event is left to conjecture, guess, or random judgment, the plaintiff cannot recover.'" *Hodge*, 360 F.3d at 451 (emphasis in original) (*quoting Town of West Point v. Evans,* 299 S.E.2d 349, 351 (Va.1983)). Where a plaintiff lacks evidence as to why an injury occurred, he or she may present evidence of the defendant's actual or constructive notice. *Hodge*, 360 F.3d at 452. Under the theory of constructive notice, the condition must pose a foreseeable risk of danger in order for knowledge of that danger to be imputed to the owner of the premises. *Id*. A plaintiff may prove constructive notice by introducing "evidence that the defect was noticeable and had existed for a sufficient length of time to charge its possessor with notice of its defective condition." *Grim v. Rahe, Inc.*, 434 S.E.2d 888, 890 (Va.1993). A *prima facie* case requires evidence of when an unsafe condition developed. *Id*.

However, where the plaintiff bases a claim for negligence on the defendant's "affirmative conduct" or the " 'genesis' of [a] dangerous condition in the first place," liability attaches if " 'an ordinarily prudent person, given the facts and circumstances [the defendant] knew or should have known, could have foreseen the risk of danger resulting from such circumstances.' " *Goehler v. Wal-Mart Stores, Inc.*, No. 99-2057, 2000 WL 1161700, at *2 (4th Cir. Aug. 17, 2000) (*citing Memco*, 348 S .E.2d at 230). Thus, Virginia law distinguishes between cases where a plaintiff alleges negligence from a defendant's "affirmative conduct," and cases where a plaintiff alleges negligence from a defendant's "passive conduct." *See Ashby*, 440 S .E.2d at 605. Allegations of "affirmative conduct" involve cases in which a defendant was the "genesis" of the dangerous condition. In "affirmative conduct" cases, notice is found where "'an ordinarily prudent person, given the facts and circumstances [the defendant] knew or should have known, could have foreseen the risk of danger resulting from such circumstances.'" *Id. (citing Memco*, 348 S.E.2d at 230). Indeed, "the foreseeability of the danger ... [is] the relevant question for [a] jury to consider in determining whether [a] defendant [has] been negligent." *O'Brien*, 491 S.E.2d at 715 (finding knowledge of the potential danger created by bolts of fabric leaning on a cutting table sufficient to support a jury's finding of negligence).

Moreover, "[t]he absence of evidence as to what caused [the dangerous condition] would not preclude the jury from finding that [the plaintiff's] injury resulted from [the store's] negligence." *Id.* at 714. Regardless of whether the jury finds that Big Lots created the dangerous condition, the jury still must decide if the store knew about the condition and negligently permitted it to exist. *Compare Goehler*, 2000 WL 1161700, at *2 (finding that the trial court properly submitted the issue of negligence to the jury when the plaintiff alleged that the store affirmatively created the dangerous condition by placing soap dispensers over the floor rather than over the sink), *with Austin*, 486 S.E.2d at 288 (imputing constructive notice to the store where the jury found that the store created the dangerous condition by failing to keep the floor in a safe and dry condition); *but see id.* at 288-89 (Compton, J., dissenting) (critiquing the

majority's finding of constructive notice absent any evidence that the store knew how long the floor's slippery condition existed).

Therefore, Palmer's claim may survive summary judgment if the evidence would allow a reasonable jury to conclude that Big Lots had actual or constructive notice of the unsafe condition that caused her injury—*i.e.*, that the condition posed a forseeable risk of danger to invitees and the owner had actual or imputable knowledge of the condition and its danger—and the jury could conclude that the owner was negligent in addressing the unsafe condition. *See Hodge*, 360 F.3d at 452 (citing *O'Brien*, 254 Va. at 491).

### 1.   Dangerous Condition?

To prove negligence in a premises liability case such as this, the plaintiff must first prove the existence of an unsafe or dangerous condition on the premises. *Id.* (citing *Kendrick*, 244 Va. at 421. Palmer alleges that "Big Lots created the hazardous condition in the first place by stacking the boxes in a manner it knew was unsafe and which led to Palmer's injury." Pl.'s Resp. at 2. Yet, Palmer does not offer any evidence to show that placing the box on the upper shelf, in and of itself, created a dangerous condition. For example, Palmer argues that Big Lots had "safety video" that "warns employees of the danger of stacked merchandise" and "falling merchandise." *Id.* at 6 ¶ 15. Palmer also underscores how Big Lots "gave its employees safety instructions about dangerous conditions arising from stacked boxes," *id.* at 6 ¶ 16, as well as "written safety materials" about handling merchandise, including stacked boxes, *id.* at ¶ 17. Also, Palmer argues that Big Lots' "risk management manual also contains safety practices and instructions to employees, including the proper and safe methods for storing and stacking boxes and other merchandise." *Id.* ¶ 18. Additionally, Palmer alleges that "Big Lots had a 'Christmas Tree Guide 2012' . . . [which] gave specific instructions to employees as to how they were to display and store the Christmas tree boxes." *Id.* ¶ 19. Palmer further alleges, that "Big Lots' regional vice president overruled these safety instructions and directed the employees at this particular store to ignore the [Christmas Tree] Guide's safety instruction. He directed them to

stack the extra boxes on the top shelf that hangs over the customer aisle, in the manner shown in the photographs of the scene (Exs. 24). Ex. 1 (Big Lots Dep. Tr., at 129-32). The employees 'executed it exactly the way' the vice president directed them. Ex. 1 (*Id.* at 129-30)." *Id.* at 8 ¶ 19.

Thus, here, there are different so-called "policies" at issue in this matter: 1) safety instructions and training policies; 2) the Christmas Tree Guide; and 3) the regional vice president's directive. First, there is no dispositive evidence that these are actual policies nor is there evidence that the directive from the vice president did not constitute a policy, or a supplement to the Guide. Big Lots insists that the Christmas tree guide is merely a "reference tool." Def.'s Mem. Ex. B (Corporate Dep. 125:12-13, 23; 126:9-13; 128:12-17) (saying that the Christmas Tree Guide is a "reference tool," utilized by stores and store managers, and that "[i]t should be used as just that."). Over 241 stores received directions from the regional vice president that supplemented the Guide's directive. *See id.* 128:9-23. Palmer states that the regional vice president "overruled [the Guide's] safety instructions." Pl.'s Resp. at 9 ¶ 21. Therefore, Palmer implicitly argues that the Guide is the internal policy of the store. However, Palmer does not offer evidence that the Guide was a safety *mandate* nor does she offer evidence that it was a *safety*, rather than a storage and display, guide. *See* Pl.'s Resp. at 8 ¶¶ 19-21. Viewing the evidence in the light most favorable to Palmer, even if the Court assumes without deciding that the Guide was a "policy," Palmer fails to show that the Guide concerned safety as opposed to storage and display. The plain language of the Guide appears to concern storage and stock replenishment. The Guide does indeed instruct the store to "create additional boxed stock destination in [its] backroom" if it "received "more boxed tree inventory than its widespan (*i.e.*, display area) can hold." Pl.'s Resp. Ex. 18. However, the very next sentence of the Guide provides: "Keep this [additional boxed stock] area accessible and organized to aid in widespan stock replenishment." *Id.* It appears that this sentence required establishment of the additional stock areas to facilitate merchandise management. The Guide does not direct Big Lots to keep stock out of other storage areas like the upper shelves. Thus, Palmer cannot show that any

14

violation of this "policy" occurred.  Reading a safety requirement into this merchandising guide requires speculation and conjecture unsupported by the evidence.  In turn, contrary to Palmer's assertions  that the regional vice president "overruled these safety instructions," Palmer fails to establish that the directive to 241 stores—including the Fredricksburg store— to stock extra boxes on the upper shelves instead of backrooms is evidence of violating safety standards.

Next, as an initial matter, Palmer presents many theories for "why" the box fell—either that a Big Lots employee (who the evidence shows only was nearby the aisle immediately before the Incident) could have knocked the box off the shelf, *id.* at 2, or that a customer caused the box to fall, *see* Def.'s Mem. Exs. J, K, L.  But Palmer suggests additional theories as well, including that "gravity" caused the box to fall, Def.'s Mem. Ex. G. (Palmer Dep. 79:19-23, 85:14-86:8), and that Big Lots was negligent in stacking the box or in not providing restraints and/or other items related to securing the boxes, Pl. Resp. 5-8.  Palmer, admittedly, has no evidence that any particular theory was "why" the box fell.  Furthermore, she cannot establish, via sufficient evidence what actually happened on December 8, 2012.  In sum, Palmer cannot and has not established the cause of the accident because there are just too many unknowns.  Was there a third-party negligence at play?  Were there external forces placed upon the shelf?  Was there a failure of the shelving system?  Were the boxes stacked too high?  Was the box improperly stacked or stored?  Did the box that hit Palmer have an imbalanced weight (because of the Christmas Tree therein) and was it likewise loaded onto the shelf in such a manner?  All these explanations are plausible, but there is no evidence beyond speculation to support a theory that leads a reasonable jury to conclude that Big Lots *caused* the accident or created the dangerous condition that caused her injury.

However, as said in *Hodge,* a plaintiff who can show both that an unsafe condition existed on store premises and how that condition injured her is not precluded, under Virginia law, from reaching a jury on the issue of negligence, simply because she lacks evidence as to *why*

the unsafe condition resulted in her injury. So the question becomes: was there a dangerous condition?

The Court finds that Palmer cannot satisfy her burden as to proving the existence of a dangerous or unsafe condition. As a preliminary matter, it is not clear from the evidence whether the box on the upper shelf was an unsafe condition or that the shelf itself was in an unsafe condition. In the absence of direct evidence that a dangerous condition existed on December 8, 2012, Palmer presupposes that because a box fell off the shelf, it must have been stacked in violation of Big Lots' internal policy. Palmer fails to create a genuine issue of material fact. *See Sneed v. Sneed*, 219 Va. 15 (1978) ("[N]egligence cannot be presumed from the mere happening of an accident."). Palmer even admits,

> When Big Lots made its "exemplar box" available for inspection by Plaintiff's expert Matthews, Big Lots actually provided two boxes. Ex. 1 (Big Lots Dep. Tr., at 78). The two "exemplar" boxes were not identical, had different dimensions and weight, and were not in the same condition. One "exemplar" box – unlike any depicted in the photographs of the scene – was a plain box with no label. The other "exemplar" box had a Christmas tree label. Neither box had a "Q" label. The box with the Christmas tree label had a hole in one end. The weight inside the box was not evenly distributed and was heavier on one end than the other. The labeled box had a pronounced bulge on the side with the label. When that "exemplar" is positioned so that the label is on the vertical side facing the aisle (as the boxes shown in the photographs of the scene were stacked), the bulge causes the top surface of the box to slope downward toward the labeled side (toward the aisle).

Pl.'s Resp. at 5 ¶10. Palmer concedes that "no valid evidence proves exactly what box struck Palmer. Palmer has never claimed that she was struck by a 'Q' box tree . . . [t]he one Big Lots employee who claims to have arrived on the scene could not identify the model of the box she claims to have observed hit the floor." *Id.* at 16 ¶ 43. Palmer alleges, "Big Lots stacked the boxes in this manner and left them as shown in the photographs of the scene for an extended period before the incident. Ex. 1 (Big Lots Dep. Tr., at 49, 179-80) (since October 2012); Ex. 3 (Causey Dep. Tr., at 81-3) (since December 1-2, 2012)." *Id.* at 5¶ 12 . But then Palmer admits that the photographs of the scene may not be sufficient to accurately depict a specific dangerous condition:

Big Lots misleadingly suggests that the photographs taken by Palmer's husband show the location from which the boxes fell and show the Q Boxes stacked "no more than two boxes high." Def. Memo. at 2. That observation is not indicative of anything relevant to the case. Palmer's husband took several pictures after the incident, but he had no first-hand knowledge of the location on the shelf from which the box(es) fell. His photos cover several areas. Further, whether or not the particular Q boxes shown in some of his photographs were stacked only two high does not suggest that the box(es) that fell were similarly stacked. As noted above, there is no reason to assume that it was Q box(es) that fell. Also, there is no basis to assume that every Q box was stacked in the stack of two shown in Palmer's husband's photo. Moreover, no reason exists to assume that, before the incident, there was only a stack of two. If anything, it is reasonable to assume that if two boxes fell, and two remain on the shelf after the incident, that the incident began with a stack of four boxes, which is consistent with the condition of the rest of the top shelf as shown in the photos.

*Id.* at 17 ¶ 44 . Palmer speculates that the box was stacked (as opposed to lying flat on the shelf) and that such stacking caused the box to fall, and she also asserts that the box was stacked in a "sloppy and hazardous manner." *Id.* at 3 ¶ 5. Yet, there is insufficient, known evidence regarding the pre-Incident condition of the boxes and the shelves to identify whether a dangerous condition existed on Big Lots' premises before the Incident occurred.  In sum, there is no definitive evidence, no foundation, from which Palmer can prove the existence of a dangerous condition on December 8, 2012.  The information that is unknown in the instant matter is striking.  Palmer does not know the shelf conditions in existence on December 8, 2012.  Palmer also does not know the precise location on the shelves from which the Incident occurred.  Palmer does not even know how many boxes hit her.  *Id.* at 10 ¶ 25 ("While Palmer was shopping, one or more of the 21.2 pound boxes fell from the top shelf."); *see also id.* at 10 n.6 ("The evidence is in conflict as to whether one or two boxes fell).

In *O'Brien*, the Supreme Court of Virginia held that a store could be held liable for the injuries of a plaintiff on which a bolt of fabric fell (*i.e.*, the how of her injury), even though the plaintiff could not prove *why* the bolt fell, because "the dangerous condition"—the bolt being leaned against a cutting table in violation of the store's safety policy—was known to a salesperson on the floor. *O'Brien*, 254 Va. 326, 331-32 (1997). According to the court in *O'Brien*, "[t]he absence of evidence as to what caused the bolt of fabric to fall would not preclude

the jury from finding that O'Brien's injury resulted from [the store's] negligence" because "[t]hese facts were sufficient to permit the jury to find, without resorting to speculation or conjecture, that the salesperson knew of the potential danger" (*i.e.*, had notice of the unsafe condition) and "to determine whether the defendant was negligent in permitting the dangerous condition to exist." *Id.* at 330-31; *see also Holcomb*, 248 Va. 445 (1994) (finding sufficient evidence to go to a jury on whether the danger posed by the allegedly unsafe condition—the manner in which certain partitions were stored—was forseeable even absent proof of why the partitions fell on the plaintiff). Neither *Holcomb* nor *O'Brien* relieves Palmer of her burden of proving a specific dangerous condition existed at Big Lots on December 8, 2012.

Palmer does not produce any evidence that the box on the upper shelf was in fact a dangerous condition. There is no evidence as to the exact location of the box and the method of stacking, and the condition of the box at the time of the accident is unknown. There is only speculation as to whether or not a dangerous condition existed and even if Palmer could demonstrate a dangerous condition, there are too many leaps that this Court is unwilling to take to conclude that the said dangerous condition caused the box to fall.

But, *arguendo*, and viewing the evidence in light most favorable to the non-movant, the Court will assume without deciding that Palmer's injury resulted from an unsafe condition posed by the box on the top shelf. Still, there is no evidence that Big Lots actually knew of the condition of the box on the upper shelf immediately preceding the Incident, and thus Big Lots lacked actual notice of the unsafe condition that injured her. Therefore, Palmer must show Big Lots' constructive notice of the unsafe condition—that is, that "an ordinarily prudent person, given the facts and circumstances [Big Lots] knew or should have known, [would] have forseen the risk of danger resulting from such circumstances . . . ." *Memco*, 232 Va. 50, 231 (1986).

2. Notice?

This Court finds that there is no evidence as to when the alleged dangerous condition arose. In fact, Palmer has not even demonstrated that said dangerous condition existed on

18

December 8, 2012 much less how long any such condition existed prior to Palmer walking down the aisle. Palmer cannot prove (1) that Big Lots knew of a specific dangerous condition; (2) had sufficient time to remedy it; and (3) failed to do so.

First, Palmer has not established that Big Lots had actual notice of the alleged unsafe condition. Nor has Palmer advanced the argument that a store walk occurred on December 8, 2012 and that if it had a Big Lots employee would have observed anything unusual: "[T]he managers are supposed to do figure-eight walks and the associates do figure-eight walks on a frequent business to identify not just ladders but any issue that may be going on inside our facility." Def.'s Mem. Ex. B (Corporate Dep. 158:17-20). Plaintiff has not proven this was not done for "nearly two months," *see* Pl.'s Resp. at 24, and that even if it was done, that Big Lots knew or should have known a specific dangerous condition existed. Having set forth no evidence of actual notice, Palmer must establish Big Lots' negligence through a showing of constructive notice.

Under the theory of constructive notice, the condition must pose a forseeable risk of danger in order for knowledge of that danger to be imputed to the owner of the premises. *See Hodge*, 360 F.3d at 451. A plaintiff may prove constructive notice by introducing "evidence that the defect was noticeable and had existed for a sufficient length of time to charge its possessor with notice of its defective condition." *Grim* 246 Va. at 242. A *prima facie* case required evidence of when an unsafe condition developed. *Id*.

Palmer advances that "Big Lots knew of the dangers associated with stacking merchandise on high shelves. Even though there is no evidence that the box was stacked on top of another box prior to the Incident or that it was stacked contrary to Big Lots' internal procedures, Palmer argues that "Big Lots' polices and instructions in effect at the time" of the Incident "expressly warned against the very conduct at issue and predicated the very injury that actually occurred." Pl.'s Resp. at 5 ¶ 14. Palmer argues that the contents of the safety instructions, safety video, and the Guide support the conclusion that "the problem of customers

getting hit by falling merchandise is so prevalent in Big Lots' stores that Big Lots even has a name for it—'struck bys'—and acknowledges that it is one of the biggest causes of accidents in its stores." *Id.* at 6 ¶ 15. However, Palmer has not offered evidence of "the very conduct at issue" and she has no basis to assert Big Lots' internal policies and procedures constitute notice of the conduct. Palmer ignores that the language she cites as being Big Lots' internal policies concern *general* merchandising.

*Holcomb* and *O'Brien* do not allow Palmer to rely upon Big Lots' general knowledge that merchandise *could* fall to establish that Big Lots knew or should have known of a specific dangerous condition. Both cases are easily distinguishable and do not apply to the instant matter. Reportedly, in *Holcombe,* the Supreme Court of Virginia held that it was forseeable to the defendant that a dangerous condition existed by its storing unbolted wall partitions against a bathroom wall—not a storage area as in the instant matter. 248 Va. at 446. In *Holcomb*, the defendant's branch manager admitted that he was aware "that the partitions might topple," [yet] no measures were taken to secure the partitions to prevent them from falling. *Id.* at 447. Therefore, the *Holcomb* plaintiff presented clear evidence that the defendant: (1) created a dangerous condition on its premises by storing the partitions in an unsafe place and in an unsafe manner; (2) allowed the condition to persist for several months knowing that it was potentially dangerous; and (3) knowingly incurred the risk of injury to others without providing any warning or remedying the dangerous condition. *Id.* at 448. In light of this evidence, the court determined that the manager's acknowledgement of the specific dangerous condition made the "foreseeability of injury occurring" an appropriate question for the jury to consider in determining the negligence of defendant; specifically, the Court held that the jury was entitled to consider whether "forseeable injury would result from storage of the partitions in the place and in the manner disclosed by the record." *Id.* at 447-48.

Here, unlike the facts of *Holcombe*, the actual pre-Incident location, orientation, and placement of the box is unknown. Palmer offers no evidence as to where, how, or even that the

box that fell was stacked prior to the Incident. Unlike the obvious risk presented by the precariously positioned wall partitions—which were in a bathroom instead of a designated storage area— the evidence does not prove that the box was stored or stacked in a dangerous condition such that one should be on notice. Without knowing the condition, position, or placement of the box, or any other box that may have fallen, prior to the Incident, Palmer cannot establish the initial, acknowledged, and obviously dangerous condition required for *Holcombe*'s forseeability standard to apply. *See Ashby v. Faison & Assoc.*, 247 Va. 166, 169 (1994). However, even if *Holcombe*'s forseeability standard applies, Palmer has no evidence that a foreseeable injury would result from storage of the boxes as disclosed by the record.

*O'Brien* is similarly distinguishable. Although the facts in *O'Brien* and in the case at bar both involve issues of premises liability, there is one key distinction: the plaintiff presented evidence that the defendant had actual knowledge of the potential danger involved in leaning multiple fabric bolts against the cutting tables. *Id.* at 330-31. In *O'Brien*, the plaintiff offered the testimony of one of the defendant's salespersons who testified that: (1) she was aware that more than one bolt of fabric was leaning against the cutting table; (2) she was aware of the defendant's policy prohibiting salespersons from leaning the fabric bolts against the cutting tables; and (3) she was aware of the defendant's policy that salespersons should only have one fabric bolt at a cutting table at a time for "safety and to keep the store neat." *Id.* at 330. Thus, the *O'Brien* plaintiff presented clear evidence that the defendant was aware of the danger presented by having the fabric bolts leaning against the cutting tables and, in fact, required its employees to maintain control of the bolts when they were removed from the racks for measuring and cutting. *Id.* at 331. Based on this presentation of evidence, the court held that the facts were "sufficient to permit a jury to find, without resorting to speculation, that the salesperson knew of the potential danger." *Id.* at 331.

In contrast to *Holcomb* and *O'Brien*, the negligent and dangerous condition Palmer alleges existed calls for the Court to assume many unknown, simultaneous combination of

speculative factors: (1) that safety instructions and training manuals are Big Lots' policy; (2) that the Guide is Big Lots' internal policy; (3) that the directive from the regional vice president in and of itself was not a policy; (4) that when the regional vice president gave the directive, he violated Big Lots' internal policy; and (5) that violation of Big Lots' internal policy either i) created a dangerous condition or ii) put Big Lots on notice that a specific dangerous condition existed.

Palmer alleges that "Big Lots had a multitude of express safety rules warning against the very actions Big Lots took and identifying the exact hazard and injury that actually occurred." Pl.'s Resp. at 23. Even a cursory reading of this statement yield the conclusion that Palmer's allegation is unfounded. Palmer cannot assert Big Lots had knowledge of "the exact hazard . . . . that actually occurred" because Palmer herself does not know what "actually occurred" (*i.e.*, what dangerous condition existed on December 8, 2012 in connection to the Incident).

Even assuming there was an unsafe condition and even assuming there was a policy in place, it is well established that "[w]hile compliance with store policies (safety or otherwise) may be sufficient in some cases to resolve the question of the store owner's constructive notice of an unsafe condition . . .[that does not] ha[ve] dispositive weight here." *Hodge*, 360 F.3d at 453. The Fourth Circuit held in *Hodge v. Wal-Mart Stores, Inc.*, that "Wal-Mart's compliance with store policies (safety or otherwise) would not preclude constructive notice of the unsafe condition of the mirror display if other evidence suggests that the condition's danger was forseeable." *Id.* Therefore, the converse of this statement would logically yield the conclusion that violating one's internal policy does not necessarily impute constructive notice. Viewing the evidence in light most favorable to Palmer, even assuming Big Lots violated its internal policy, the evidence still would not allow a reasonable jury to conclude that Palmer carried her burden as to this point. Palmer maintains multiple allegations about alleged safety violations and the unacceptable manner in which Big Lots stored the box. As evidence, Palmer points to incidents of falling merchandise that occur in Big Lots stores generally and discusses evidence that "the

problem of customers getting hit by falling merchandise is so prevalent in Big Lots' stores that Big Lots even has a name for it—'struck bys'—and acknowledges that it is one of the biggest causes of accidents in its stores." *Id.* ¶ 15. The plaintiff in *Hodge*, like Palmer, argued any one of several potential scenarios caused a mirror to fall and hit her. 360 F.3d at 452. The plaintiff in *Hodge* also argued it was irrelevant which scenario caused the mirror to fall because Wal-Mart had knowledge that merchandise could fall and hurt a customer. *Id.* at 453. The Fourth Circuit rejected this argument and held Wal-Mart's general knowledge that merchandise could fall from shelves as high as six feet tall was insufficient to establish constructive notice of a specific condition. *Id.* at 452-454, 454 n.4. Rather, the court held Virginia law required the plaintiff in *Hodge* to show Wal-Mart had notice of the "specific unsafe condition that injured her." *Id.* at 454. Here, Palmer's assertions only amount to generalized assertions that Big Lots generally knew merchandise stored on high shelves could fall. Thus, Palmer's evidence is insufficient proof of actual or constructive notice under Virginia law; it only goes to whether the unsafe condition that produced her injury was foreseeable in general, not whether Big Lots had actual or constructive notice of the specific dangerous condition. Such generalized "falling merchandise" arguments are "method theory" allegations, which have been squarely rejected by the Supreme Court of Virginia. *Id.* at 453 (citing *Winn-Dixie*, 240 Va. at n.3) (holding that a plaintiff may not prove constructive notice based on the "the means used to exhibit commodities for sale."). Accordingly, like *Hodge*, Palmer must show *when* the box became dangerous. Although Palmer argues the boxes existed in the same exact condition for at least two months, she has not provided any evidence to support this assertion. Substituting the box at issue for mirrors, it is just as "logical to assume that an unsafe condition with the mirrors arose moments before [Palmer] entered the display areas as it is to assume that it had been there long enough that [Big Lots] should have known about it." *Hodge*, 360 F.3d at 454. Similarly, Palmer claims that "[w]ithin the eight-month period before Palmer was injured, there were two separate incidents in this store when people were injured when items fell on them as they reached for

merchandise on the top shelf." Pl.'s Resp. ¶ 15. However, Palmer stretches depositional testimony and, in effect, offers no evidence that those prior incidents are substantially similar to the instant case. *See Spurlin Adm'x. v. Richardson*, 203 Va. 984, 989 (1962) ("It is well settled that evidence of prior accidents or occurrences is not admissible and can have no effect in establishing the defendant's knowledge of a danger unless the plaintiff shows that those prior accidents or occurrences happened at substantially the same place and under substantially the same circumstances and had been caused by the same or similar defects and dangers as those in issue, or by acts of the same person.").

In sum, Palmer's fatal flaw is that she fails to provide evidence that a dangerous condition existed in Big Lots' store on December 8, 2012, which foreseeably caused the box to fall off the upper shelf and hit Palmer. Even if Palmer had evidence of a dangerous condition, she has provided no evidence, sufficient to survive a summary judgment, that Big Lots had actual or constructive notice. There is no doubt that each theory of liability Palmer advances would require a jury to engage in speculation to find Big Lots negligent.

## V.     Conclusion

For the aforementioned reasons, the Motion for Summary Judgment will be GRANTED. ECF No. 107.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order shall issue.

_____/s/_____
James R. Spencer
Senior U. S. District Judge

ENTERED this _12th_ day of January 2015.

24